# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA M. HAUBERT, | CASE NO. 3:13-cv-02349-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| | MEMORANDUM |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 9, 10, 15, 16 |

## **MEMORANDUM**

### I.  **Procedural Background**

On November 18, 2009, Plaintiff filed an application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").  (Tr. 113-21). On June 25, 2010, the Bureau of Disability Determination denied this application (Tr. 57-70), and Plaintiff filed a request for a hearing on September 8, 2010.  (Tr. 71-88). On December 14, 2011, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—a vocational expert ("VE"), and Plaintiff's daughter appeared and testified. (Tr. 22-56).  On February 2, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 7-21). On March 27, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 6), which the Appeals denied on July 30, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr.

1-5).

On September 13, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 3, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On February 28, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 15). On April 1, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 16). On November 25, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 20). The matter is now ripe for review.

## II.  Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on March 4, 1975 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 17). 20 C.F.R. § 404.1563. Plaintiff has a limited education and past relevant work as a general farm worker, newspaper delivery driver, and service station attendant. (Tr. 17).

## A. Testimony

On December 14, 2011, Plaintiff appeared and testified before the ALJ. (Tr. 22-56). She testified that she could not work full-time because she loses her breath too quickly. (Tr. 29). She also testified that she cannot concentrate and needs to use the bathroom every twenty to thirty minutes. (Tr. 29). She testified that her medications help her shortness of breath "a little bit." (Tr. 30). She testified that she no longer rides horses. (Tr. 30). She also testified that she was susceptible to broken bones due to her bone density. (Tr. 36). She reported that she could only walk up thirteen stairs before needing to stop and catch her breath. (Tr. 37). She indicated that her ability to perform household chores was limited due to her shortness of breath. (Tr. 40). She testified that her daughter makes sure that she takes her medications and gives her three shots a day, "seven days a week." (Tr. 42).

Plaintiff's daughter, Sierra Haubert, also appeared and testified. (Tr. 45). Her sixteenth birthday was the next day. (Tr. 45). She corroborated Plaintiff's claims that she helped Plaintiff do her newspaper delivery route after she was hospitalized in the fall of 2009. (Tr. 45). She confirmed that she has an alarm set on her phone for when her mother needs medications, and that Plaintiff forgets her medications "a lot." (Tr. 47). She corroborated Plaintiff's testimony that she no longer rides

horses. (Tr. 47). She confirmed that Plaintiff cannot walk for more than five or ten minutes without getting short of breath. (Tr. 48).

## B. Medical Records

Plaintiff presented to the emergency room at Carlisle Medical Center on September 26, 2009. (Tr. 205-11). She reported coughing and shortness of breath. (Tr. 205-11). On examination, she had wheezing with auscultation. (Tr. 210). Plaintiff was unsuccessfully treated with a nebulizer, so she was treated with antibiotics and a continuous nebulizer via a pump. (Tr. 205-11).

On September 28, 2009, Plaintiff returned to the emergency room with complaints of cough and congestion. (Tr. 225). She was assessed to have an exacerbation of chronic obstructive pulmonary disease ("COPD"). (Tr. 225). She was treated with oxygen, antibiotics, and corticosteroids. (Tr. 225). She was admitted for two days. (Tr. 224-25). She was wheezy with poor air movement. (Tr. 224-25). Pulmonary function testing indicated that her FEV1 was 24%, FEV1 post-treatment was 38%, and her FEV1 to FVC ratio was 49% (Tr. 225). On September 29, 2009, a spirometry test which indicated decreased flow and volume consistent with moderately severe obstruction and an 11% improvement inflow following an inhaled bronchodilator (Tr. 202).

On November 11, 2009, Plaintiff followed-up with her primary care physician at Spring Road Family Practice, Inc., after her hospitalization. (Tr. 258).

She had been unable to follow-up prior to that time because she needed to get her insurance reinstated. (Tr. 258). She continued to report cough, congestion, and shortness of breath. (Tr. 258). Her respiratory examination was normal. (Tr. 258).

On May 10, 2010, Dr. Ronald Vandegriff, D.O., performed a consultative examination of Plaintiff. (Tr. 274-79). He opined that that Plaintiff could occasionally lift and carry two to three pounds, and could stand and walk one to two hours in an eight-hour workday (Tr. 274). Plaintiff could sit for eight hours but would need an alternating sit/stand option (Tr. 274). Plaintiff could occasionally bend and kneel, but could never stoop, crouch, balance, or climb (Tr. 275).

On September 8, 2010, Plaintiff followed-up at Spring Road Family Practice. (Tr. 424). Plaintiff's respiratory examination was normal. (Tr. 424). Plaintiff had "not been 100% compliant with visits…not on Spiriva anymore as she ran out." (Tr. 424). Plaintiff's COPD was characterized as "mild." (Tr. 424). Plaintiff's Spiriva was restarted, her Advair was continued, and she was encouraged to "stay smoke free." (Tr. 425). She was also referred to an endocrinologist for her Men1. (Tr. 425).

On October 4, 2010, Plaintiff followed-up at Spring Road Family Practice. (Tr. 426). She was complained of shortness of breath that was getting worse. (Tr. 426). Plaintiff continued to smoke cigarettes but had "cut down." (Tr. 426). On respiratory examination, she had wheezing. (Tr. 426). Plaintiff was noted to have

"no acute exacerbation" of COPD, she was "strongly encouraged" to "completely stop smoking," and encouraged her to be compliant with Spiriva and Advair. (Tr. 427).

On April 4, 2011, Plaintiff reported "more trouble breathing and wheezing mostly at night." (Tr. 430). She was not using Spiriva or Advair because it had "ran out." (Tr. 430). She continued to smoke a half-a-pack of cigarettes a day. (Tr. 430). Plaintiff had "distant breath sounds" and wheezing on respiratory examination. (Tr. 430). Plaintiff's COPD was characterized as "uncontrolled" and she was instructed to restart her medications. (Tr. 430).

Plaintiff continued to be treated at Spring Road Family Practice for uncontrolled diabetes, feeling "tired and run down," and digestive problems at several visits in June, July, and August of 2011. (Tr. 432-39). On September 16, 2011, she reported getting pinned in a stall with a horse and injuring her leg. (Tr. 440). In November of 2011, she reported having "two seizures within a week," possibly as an allergic reaction. (Tr. 442). Notes indicate that Plaintiff may have "had syncope due to hypoglycemia." (Tr. 443). Her insulin was decreased. (Tr. 443). Later in the month, Plaintiff reported pain in her eye and that her eye would "roll back in her head." (Tr. 444). She was referred to an ophthalmologist. (Tr. 444).

On December 7, 2011, Plaintiff followed-up at Spring Road Family Practice. (Tr. 446). Plaintiff continued to be "very" short of breath with exertion and she reported that she had to stop to catch her breath when she walked down to get the mail. (Tr. 446). Plaintiff was also "battling her blood sugars." (Tr. 446). Plaintiff's COPD was assessed to be subjectively "worsening" and she was referred to a specialist for an opinion. (Tr. 447).

On January 10, 2012, Plaintiff was evaluated by Dr. Leon W. Sweer, M.D. for her shortness of breath, cough, and wheezing (Tr. 470). On examination, Plaintiff's lungs were "remarkable for significant expiratory wheezing in all fields and an expiratory delay." (Tr. 472). Her breath sounds were "slightly diminished." (Tr. 472). Plaintiff walked for about three minutes at a moderate pace, including one flight of steps, and her oxygen saturation dropped to 89% (Tr. 472). Dr. Sweer concluded that Plaintiff had a "significant degree of obstructive airways disease." (Tr. 472). Dr. Sweer noted that Plaintiff was not "particularly eager to help herself in that she has a very low tolerance for medical advice based on her history." (Tr. 472). He noted that, regarding her:

> [R]equest for disability, I need to see her pulmonary function test results before commenting but I suspect she certainly would not be able to engage at this point in occupations requiring any significant degree of exertion such as walking more than 3-5 minutes or lifting a significant amount of weight greater than 20 or 30 pounds in a repetitive fashion. Other than that, we will wait to see what her pulmonary function tests show.

(Tr. 472).

On February 13, 2012, Plaintiff followed-up with Dr. Sweer. (Tr. 473). Dr. Sweer reported that Plaintiff's pulmonary function evaluation revealed she had moderate obstructive airways disease with an FEV1/FVC ratio of 0.69 with a predicted value of 0.85 (Tr. 473). Plaintiff's forced vital capacity was 67% predicted and her FEV1 was 54% predicted or 1.67 liters (Tr. 473). She had a 12% improvement with bronchodilator (Tr. 473). Plaintiff "looked pretty comfortable at rest but she does have an oxygen saturation of 89-90%." (Tr. 473). Findings on physical examination were the same as her prior visit. (Tr. 473-74). Dr. Sweer opined that:

> I think that her functional status and hypoexemia and pulmonary function tests show that she would not be able to participate in jobs that she used to have such as driving a forklift, delivering newspapers, or working on a farm. A sedentary job of some kind might be okay but I do not know that she is trained for any of this at the present time.

(Tr. 474).

In April of 2012, Dr. Sweer completed a medical source opinion. (Tr. 467). He opined that Plaintiff could occasionally lift up to twenty pounds, and could occasionally carry up to ten pounds (Tr. 462). He concluded Plaintiff could sit for three hours without interruption, stand for twenty minutes without interruption, and walk for five minutes without interruption (Tr. 463). He further opined Plaintiff could sit for eight hours, stand for one hour, and walk for thirty minutes in an eight-hour workday (Tr. 463).

## C. ALJ Findings

On February 2, 2012, the ALJ issued the decision. (Tr. 18). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 13, 2009, the application date. (Tr. 12). At step two, the ALJ found that Plaintiff's COPD (chronic obstructive pulmonary disease), diabetes, MEN 1 syndrome (multiple endocrine neoplasia), depression and obesity were medically determinable and severe. (Tr. 12). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 12). The ALJ found that Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except the claimant's lifting and carrying are limited to 3 pounds occasionally. The claimant is 36 years old and has an 8th grade education. Her standing and walking are limited to 2 hours in an 8-hour workday. The claimant is able to sit 8 hours in an 8-hour workday. Additionally, she must be allowed to alternate sitting and standing at will. The claimant should never bend, stoop, crouch, crawl or climb stairs. She must avoid unprotected heights, moving machinery, temperature extremes, humidity and wetness, fumes, dust, odors and gases. The claimant must also avoid industrial chemicals and workplaces with poor ventilation. Moreover, she is limited to jobs involving no more than simple judgments. She is limited to only occasional interactions with supervisors.
>
> The claimant's attention and concentration is reduced to 90% of the workday. Furthermore, the claimant can be expected to be absent one day per month on average.

(Tr. 17). A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 17). At step five, in accordance with VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 58-59).

Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 18).

### V.     Plaintiff Allegations of Error

### A. The ALJ's credibility assessment

Plaintiff asserts that the ALJ erred in failing to acknowledge the third-party testimony of Plaintiff's daughter. Failure to address third-party statements generally renders a credibility assessment defective. As the Third Circuit has explained:

> Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. *See Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir.1983); *Cotter,* 642 F.2d at 707. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, *see Hartranft,* 181 F.3d at 362 (citing 20 C.F.R. § 404.1529), the ALJ must still explain why he is rejecting the testimony. *See Van Horn,* 717 F.2d at 873. In *Van Horn,* this Court set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony. *See* 717 F.2d at 873. In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective medical evidence. However, the ALJ failed to mention the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman. On appeal, the Commissioner contends the ALJ did not need to mention their testimony because it "added nothing more than stating [Burnett's] testimony was truthful." Commissioner's Brief at 21. This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility. R. 17 ("claimant's allegations of disability made at hearing are unsubstantiated"). In *Van Horn,* we stated we expect the ALJ to address the testimony of such additional witnesses. On remand, the ALJ must address the testimony of George Burnett and Earl Sherman.

*Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir. 2000). Defendant responds only by citing a District Court case from Oklahoma that indicates an ALJ is not required to address third-party statements. (Def. Brief at 26) (citing *Chapen v. Astrue*, No. 12-004, 2013 WL 1195282 *4 (E.D.Okla. March 22, 2013)).

However, this case is not binding on this Court. In contrast, *Burnett* plainly states that the Third Circuit "expect[s] the ALJ to address the testimony of such additional witnesses." *Id.* at 122. The ALJ did not address Plaintiff's daughter's statement, and the Court is bound by *Burnett* to recommend remand on this ground. The ALJ concluded that Plaintiff would not be absent more than once per month or off-task more than ten percent of the time. *Supra.* The ALJ also concluded that Plaintiff could be on her feet for two hours out of an eight-hour work day.  Had the ALJ considered Plaintiff's daughter's statement, he may not have come to these same conclusions. Consequently, the ALJ's failure to address Plaintiff's daughter's testimony precludes meaningful review of his credibility assessment. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review") (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The Court remands for the ALJ to properly evaluate Plaintiff and Plaintiff's

daughter's credibility. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

## VII.    Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to address Plaintiff's daughter's testimony. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: March 31, 2015                              *s/Gerald B. Cohn*
                                                                    GERALD B. COHN
                                                    UNITED STATES MAGISTRATE JUDGE